In re the Marriage of Patricia Sue **TAYLOR, Appellant-Respondent,**

v.

**David Gary TAYLOR, Respondent-Appellant.**

**No. 69082.**

Supreme Court of Missouri, En Banc.

Sept. 15, 1987.

Rehearing Denied Oct. 13, 1987.

**389**

Gina M. Graham, Blue Springs, for appellant-respondent.

John W. Dennis, Jr., Independence, for respondent-appellant.

ROBERTSON, Judge.

These are cross appeals in a divorce action. In his appeal, the husband primarily asserts that the trial court erred in refusing to recognize and attach a monetary value to the goodwill of his wife's chiropractic practice. The wife assigns error to the valuation of the wife's chiropractic practice and in its distribution of marital assets. The Western District, relying on its opinion in *Hanson v. Hanson,* reversed the trial court's judgment, finding that goodwill in a professional practice is an asset subject to valuation and distribution as part of the marital property in a dissolution action. Because we granted transfer in *Hanson v. Hanson,* 738 S.W.2d 429 (Mo. banc 1987), the judges of the Court of Appeals, Western District, transferred this case to this Court. Rule 83.02. We have jurisdiction and decide the case as if on original appeal. Mo. Const. art. V, sec. 10. The judgment of the trial court is affirmed.

I.

David and Patricia Taylor were married in 1976 when both were college students. They agreed that David would pursue his interest in becoming a member of the United States Olympic Volleyball Team while Patricia worked and continued her schooling. Volleyball training took them to Michigan, and subsequently to Ohio. Both eventually postponed their education as David continued his quest.

In 1978, David abandoned his volleyball aspirations. The couple decided that David would work while Patricia completed her education. In 1979, Patricia entered chiropractic college. David's work, student loans and loans from David's parents sustained the couple financially during Patricia's time in chiropractic college. Two children were born to the marriage, Amanda Sue, born June 6, 1981, and David Scott, born February 27, 1983.

After graduating from chiropractic college, Patricia founded the Taylor Chiropractic Center. The couple's financial picture brightened dramatically. In 1984, Patricia's income reached nearly $71,000. During that same year, David earned approximately $3,200. The couple separated in December, 1984; Patricia filed for dissolution of marriage in January, 1985.

At trial, David called as an expert for purposes of valuing Patricia's chiropractic practice, Robert W. Boland. Mr. Boland holds a bachelor's degree in accounting, a law degree, and a master of laws in taxation. He is experienced in valuing professional practices, having done so between twenty-five and fifty times. Mr. Boland testified that Patricia's chiropractic business had a value of $280,978. Of this amount, $159,644 represented collectible accounts receivable, property, equipment, leasehold improvements and cash on hand. The remaining $121,334 represented Mr. Boland's assessment of the going concern value/goodwill of the practice.[1]

The goodwill/going concern value was the product of Mr. Boland's capitalization of the average adjusted annual net income of the practice ($101,112) at a rate of fifty percent, discounted by a factor of .60 for "lack of an adequate valuation testing period."

---

1. This amount was based in part on the assumption that Patricia would continue in the chiropractic practice.
On cross-examination the following exchange took place:

Q. But in essence what you're doing is selling her, there's nothing else to it, isn't that true?
A. [By Mr. Boland] Again, assuming a continuing practice; right, that would be correct?

The trial court valued the chiropractic practice at $120,521. The court found no goodwill in the practice, relying in part on evidence that a complaint had been filed against Patricia with the State Board of Chiropractic Examiners which, in the trial court's view, placed her license in jeopardy. In its order the trial court also stated that "even if, as a matter of law, goodwill is ultimately held to be a divisible marital asset ... there is no evidence from which the court can conclude that Dr. Patricia Taylor is possessed of goodwill in her chiropractic business."

The trial court entered its decree dissolving the marriage, awarding custody of the children of the marriage, and dividing marital property. Both parties appealed.

## II.

In *Hanson v. Hanson*, 738 S.W.2d 429 (Mo. banc 1987), this Court held that goodwill in a professional practice acquired during the marriage is marital property subject to division in a dissolution of marriage proceeding. In so doing, we stated our strong preference for fair market valuation as both evidence of the existence of goodwill and of its true value. We also rejected capitalization formulae as evidence of the value of goodwill because of the speculative nature of such formulae within a professional context, their focus on placing a present value on the future earning capacity of the individual professional and because of the "disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value." *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343, 355 (Wis. App.1981).

In this case, the trial court heard no evidence of the fair market value of any goodwill in the Taylor chiropractic practice. Neither did the court hear evidence concerning sales or offers for sale of other chiropractic practices within the relevant market area. David's expert, Mr. Boland, merely assumed the existence of good-will/going concern value and found its value through a capitalization formula we have rejected as competent evidence of the existence or value of goodwill.

■ In the absence of fair market value evidence, the trial court properly concluded that there was no goodwill value in the Taylor Chiropractic Center. David's point is denied.

## III.

Patricia argues two points on appeal. The points are a murky amalgamation of claimed error, essentially disputing the trial court's (1) use of the trial date as the date of valuation of the assets of the Taylor Chiropractic Center; (2) failure to consider the tax consequences of the marital property distribution; (3) failure to consider the cost of collection of the accounts receivable; (4) excessive valuation of the tangible assets of the Taylor Chiropractic Center; and (5) failure to consider that Patricia's sole effort produced the value in the chiropractic practice. We address Patricia's assignments of error seriatim.

## A.

Patricia first contends that the trial court erred in valuing the assets of the Taylor Chiropractic Center as of the date of the trial; she argues instead that the proper valuation date is the date she filed her dissolution action.

Section 452.330, RSMo 1986, provides in pertinent part:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

\* \* \* \* \* \*

(3) Property acquired by a spouse after a decree of legal separation;

\* \* \* \* \* \*

3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property. ... *Each spouse has a common ownership in marital property which vests not*

*later than the time of commencement by one spouse against the other of an action in which a final decree is entered for dissolution of the marriage or legal separation, the extent of the vested interest to be determined and finalized by the court....*

[Emphasis added.] In *Shelor v. Shelor*, 683 S.W.2d 647, 649 (Mo.App.1984), the Court of Appeals, Eastern District held that the 1981 amendment to Section 452.-330.3 (emphasized in the quoted section, *supra*) established a cut-off date for common ownership of marital property as of the time of commencement of a dissolution action. *Shelor*, therefore implies that the proper date for valuing marital property is the date on which a dissolution is filed and not the date of trial. Patricia relies on *Shelor*.

However, in *Giedinghagen v. Giedinghagen*, 712 S.W.2d 711 (Mo.App.1986), the Eastern District determined that *Shelor* should no longer be followed. Instead, *Geidinghagen* holds that marital property includes any property acquired up to the date of a decree of legal separation or dissolution. *Id.* at 713.

*Giedinghagen* is a well-reasoned analysis of the purposes behind the General Assembly's 1981 amendment of Section 452.330.3. (1981 Laws of Missouri, 15–16). In sum, the Eastern District interpreted that amendment as a legislative response to *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). In *Davis*, the United States Supreme Court ruled that a transfer of stock held solely in a husband's name to the wife in satisfaction of her property claims in a divorce action is a taxable event. In order to avoid such a result, the legislature amended Section 452.330.3 to "establish a species of co-ownership of marital property in the spouses upon the filing of a petition for dissolution...." *Giedinghagen*, 712 S.W.2d at 713. We believe *Giedinghagen* correctly states the law.

■ Although *Giedinghagen* does not directly consider the issue posed by Patricia as to the proper date for valuing marital property, its implication is that the date

of trial is the proper date for valuing marital property. Such a conclusion is consistent with the notion that property acquired during the marriage, including that acquired after the filing of a dissolution action but before the entry of a dissolution decree, is marital property. We hold that the proper date for valuing marital property in a dissolution proceeding is the date of trial. The trial judge, therefore, did not err in valuing the Taylor's marital property on the trial date. The point is denied.

### B.

Patricia next urges that the trial court erred in failing to consider the tax consequences of the marital property distribution. In fashioning the fair and equitable division of the marital property commanded by the statute, we assume that the trial court considered all of the evidence presented to it. We will disturb the trial court's division of property only where it is improper, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), or where an abuse of discretion is found, *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 66 (Mo. banc 1983). Patricia makes no claim that the trial court refused to consider her evidence on the tax consequences of the property division; in fact, our review of the record indicates that the trial court was presented with neither evidence nor legal argument concerning tax consequences. Having failed to offer the trial court the opportunity to consider tax consequences, Patricia will not now be heard to complain. The point is denied.

### C.

Patricia next argues that the trial court erred in failing to consider the cost of collecting the accounts receivable of the Taylor Chiropractic Center. The trial court found the total accounts receivable of the practice were $248,000. In valuing the practice for purposes of the division of marital property, however, the trial court discounted the accounts receivable by fifty percent, placing their value at $124,000. The trial court may well have considered the cost of collection in arriving at its discounted value for the accounts receivable. In any event, Patricia placed no evidence of the cost of collecting the accounts receiva-

**392**

ble before the trial court. We cannot conclude that the trial court abused its discretion or reached an improper division of the marital property. There is ample evidence to support the trial court's decision. The point is denied. *Dardick v. Dardick*, 670 S.W.2d 865 (Mo. banc 1984).

### D.

Patricia next argues that the value placed on the tangible assets of the Taylor Chiropractic Center by the trial court was excessive. The trial court's order shows careful attention to the evidence and careful consideration of an appropriate division of marital property. It is supported by the evidence. We will not disturb it. *Id.* The point is denied.

### E.

█ Finally, Patricia assigns error to the trial court's failure to consider that it was her sole effort that produced the entirety of the value of the chiropractic practice. Section 452.330.1(1), RSMo 1986, requires the trial court to consider the contributions of each spouse to the acquisition of marital property. There is no dispute that Patricia's efforts were the major source of the value in the chiropractic practice. It is just as clear that at least a portion of the funds which allowed Patricia to attend and graduate from chiropractic college were furnished by David or his family. Apparently, the trial court took David's important financial contribution to Patricia's chiropractic career into consideration in dividing the marital property. Given the broad discretion we accord trial courts in forging a fair and equitable division of marital property, we must deny Patricia's point.

The judgment of the trial court is affirmed.

BILLINGS, C.J., and BLACKMAR, DONNELLY, RENDLEN, HIGGINS, JJ., and PREWITT, Special Judge, concur.

WELLIVER, J., not sitting.