■ KAREN M. SOMMER, Respondent, v FRANK B. SOMMER, Appellant.—Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Fischer, J.) ordering, inter alia, equitable distribution of the parties' marital property, entered May 2, 1990 in Broome County, upon a decision of the court.

The parties' 23-year marriage, during which defendant was the breadwinner and plaintiff functioned as the homemaker and primary caretaker of the parties' three children, has ended in divorce. At the time of trial, defendant was 48 years

of age, in good health, possessed of a graduate degree in business from Columbia University and operated a franchised personnel business, Sanford Rose Associates. Plaintiff was two years younger, also in good health, and at the time of trial was a tenured elementary school teacher. Defendant appeals from Supreme Court's decision regarding equitable distribution of the parties' marital property (the assets were divided equally), the maintenance and child support awards, and the allowance of counsel fees to plaintiff.

The marital property consists of the parties' former residence and franchised business. Prior to trial, the parties agreed that the residence was to become the sole property of plaintiff and the business the sole property of defendant. After hearing expert testimony on the fair market value of both assets, Supreme Court valued the residence at $73,500 and the business at $33,349, and required plaintiff to pay defendant $20,075 to equalize the required distribution. The court refused to credit defendant with $3,500 separate property he claimed to have brought to the marriage.

In addition, plaintiff was awarded maintenance of $50 per week until October 15, 1994, a period of approximately five years, or earlier upon the statutory termination of such maintenance (see, Domestic Relations Law § 236 [B] [1] [a]). Pursuant to the Child Support Standards Act (Domestic Relations Law § 240), plaintiff was awarded $204 per week for child support from January 12, 1990 through February 13, 1991, the 21st birthday of one of the parties' two minor children, and $139 per week from February 13, 1991 through October 15, 1994, the 21st birthday of the other minor child.* Defendant was charged with 65.6% of any reasonable health care expenses not covered by plaintiff's family insurance policy through her employment and his request that he be allowed to claim the three children as tax exemptions was denied. He was also directed to make retroactive maintenance payments in the sum of $50 per week from July 7, 1989, child support arrearages due and unpaid pursuant to a preexisting Family Court order, and $2,500 for plaintiff's counsel fees. Plaintiff was ordered to pay defendant his net share of the marital assets, less the deductions for retroactive maintenance, child support arrears and counsel fees, within not more than 90 days after the entry of judgment. Defendant appeals.

---

* Contrary to defense counsel's belief, we do not interpret the language of this child support award to preclude an application for modification upon a showing of a substantial change in circumstances (see, Domestic Relations Law § 236 [B] [9] [b]).

After reviewing the record and Supreme Court's comprehensive and well-considered decision, we differ only as to the court's valuation of the business. While the court acted within its discretion in choosing to apply the capitalization of earnings method using gross sales over a five-year period (see, 3 Foster, Freed and Brandes, Law and the Family New York § 15:3, at 646-647 [2d ed]; see also, Beckerman v Beckerman, 126 AD2d 591, 592), we are persuaded, as defendant urges, that 1984, an abnormally high sales year, should have been excluded (see, 3 Foster, Freed and Brandes, Law and the Family New York § 15:3, at 646-647 [2d ed], citing Revenue Ruling 68-609 [1968-2, Cum Bull 327]). Doing so, gross sales of the five most recent years, after the deletion of 1984 in which sales were $103,801, are as follows:

| | |
|------|---------|
| 1983 | $ 48,266 |
| 1985 | 54,473 |
| 1986 | 37,488 |
| 1987 | 57,482 |
| 1988 | 80,246 |
| TOTAL: | $277,955 |

The five-year average is $55,591; 50% of that average, or $27,796, represents the value of the business.

The business's lack of marketability should also have been taken into consideration in arriving at its ultimate value (see, 3 Foster, Freed and Brandes, Law and the Family New York § 15:2, at 645 [2d ed], citing Central Trust Co. v United States, 305 F2d 393; see also, Beckerman v Beckerman, supra, at 592). Given that the record indicates that the business's gross earnings for the first nine months of 1989 were only $650, that its success depends on the state of the local industrial economy, that defendant would be obliged to pay another business $6,000 to train a new owner if he were to sell, and that its assets have been valued at best at $5,000, defendant's ability to sell the business is problematic. Under these circumstances, the valuation of the business should have been discounted.

Accordingly, that portion of Supreme Court's judgment which awarded equitable distribution based on the valuation of defendant's business at $33,349 must be reversed and the matter remitted for recalculation of the value of defendant's business, and award equitable distribution in accordance therewith.

Casey, J. P., Mikoll, Levine and Crew III, JJ., concur. Ordered that the judgment is modified, on the law and the

facts, without costs, by reversing so much thereof as valued the personnel business at $33,349; matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.